**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MSTM, LLC AND M&M MASS SPEC
CONSULTING, LLC,

          Plaintiffs,

    v.

AB SCIEX LLC,

          Defendant.

Civ. No.: 1:23-cv-11121-MRG

## ORDER ON DEFENDANTS' MOTION TO DISMISS [ECF No. 37]

**GUZMAN, J.**

Plaintiffs MSTM, LLC ("MSTM") and M&M Mass Spec Consulting, LLC ("M&M") (collectively, "Plaintiffs") bring this action against Defendant AB Sciex LLC ("Sciex" or "Defendant"), alleging that Sciex, after entering into multiple confidentiality and nondisclosure agreements to evaluate potential collaboration and licensing of Plaintiffs' patented mass spectrometry ionization technologies, including the Patents-in-Suit and other proprietary information, improperly used those disclosures to develop, manufacture, use, sell, offer for sale, and import mass spectrometry instruments incorporating Plaintiffs' patented and trade secret technologies without authorization. [See generally Am. Compl., ECF No. 36]. Plaintiffs further allege that Sciex misappropriated trade secrets disclosed under non-disclosure agreements, breached contractual obligations limiting the use of confidential information for licensing evaluation, and unjustly retained economic benefits while refusing to enter into a license agreement. [Id.]

1

Before the Court is Defendant's Partial Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). [Def.'s Mot. Dismiss, ECF No. 37]. Defendant moves the Court to dismiss Counts II-VIII for direct and indirect patent infringement, all causes of action for contributory infringement under Counts I-VIII, and Count XII for unjust enrichment. [Id.] After careful consideration and oral argument, [ECF No. 64], the Motion to Dismiss, [ECF No. 37] was **DENIED** by electronic order, [ECF No. 75]. This Memorandum provides the reasoning for the Court's ruling and supersedes the Court's previous determination for the unjust enrichment claim. The Motion to Dismiss for Count XII is **GRANTED.**

## I.    BACKGROUND

The following relevant facts are taken primarily from the allegations in Plaintiffs' Amended Complaint and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).") (quotation omitted)). All plausible inferences are made in Plaintiffs' favor. Id.

### A. The Patents-in-Suit

Between July 12, 2011, and October 6, 2020, the United States Patent and Trademark Office ("USPTO") duly and legally issued eight patents relating to mass spectrometry: U.S. Patent Nos. 7,977,629 ("the '629 Patent"), 9,105,458 ("the '458 Patent"), 10,679,838 ("the '838 Patent"), 11,430,648 ("the '648 Patent"), 9,870,909 ("the '909 Patent"), 9,552,973 ("the '973 Patent"), 10,128,096 ("the '096 Patent"), and 10,796,894 ("the '894 Patent") (collectively, the "Patents-in-

Suit"). [Am. Compl. ¶¶ 1, 28–35].[1] The Patents-in-Suit—all of which are owned or exclusively licensed by Plaintiffs—relate to mass spectrometry, an analytical technique that identifies the structure and chemical properties of molecules. [Id. ¶¶ 2, 35; ECF No. 38 at 2]. Mass spectrometry is a key technology in applications such as drug development, proteomics, metabolomics, chemical analyses, and pharmaceutical testing. [Am. Compl. ¶ 2].

On July 12, 2011, the USPTO issued the '629 Patent, entitled "Atmospheric Pressure Ion Source Probe for a Mass Spectrometer," to inventors Charles Nehemiah McEwen and Richard Garrett McKay. [Id. ¶ 28]. On August 11, 2015, the USPTO issued the '458 Patent, entitled "System and Methods for Ionizing Compounds Using Matrix-Assistance for Mass Spectrometry and Ion Mobility Spectrometry," to inventors Sarah Trimpin and Ellen dela Victoria Inutan. [Id. ¶ 29]. On June 9, 2020, the '838 Patent, and on August 30, 2022, the '648 Patent were issued to the same inventors under the same title. [Id. ¶¶ 30–31].

On January 24, 2017, November 13, 2018, and October 6, 2020, respectively, the USPTO issued the '973 Patent, the '096 Patent, and the '894 Patent, each entitled "System and Method for Ionization of Molecules for Mass Spectrometry and Ion Mobility Spectrometry," to inventors Charles Nehemiah McEwen, Sarah Trimpin, and Vincent Salvatore Pagnotti. [Id. ¶¶ 33–35]. On January 16, 2018, the USPTO issued the '909 Patent, entitled "Compositions and Methods for Mass Spectrometry," to inventor Sarah Trimpin. [Id. ¶ 32].[2]

---

[1] The Patents-in-Suit are attached as exhibits to the Amended Complaint. See Ex. A, ECF No. 36-1; Ex. B, ECF No. 36-2; Ex. C, ECF No. 36-3; Ex. D, ECF No. 36-4; Ex. E, ECF No. 36-5; Ex. F, ECF No. 36-6; Ex. H, ECF No. 36-8; Ex. I, ECF No. 36-9.

[2] The Court notes that paragraph 32 of the Amended Complaint references both the '648 and '909 Patents and assumes based on the context of this section that the Plaintiffs intended to refer to '909 Patent only.

As the CEO and co-founder of MSTM, Dr. Trimpin invented the '458, '898, '648, '838, and '909 Patents, which relate to matrix-assisted ionization vacuum ("MAIV") technology. [Id. ¶¶ 68–69, 71]. MSTM's patented and licensed mass spectrometry technologies, invented by Drs. McEwen, Trimpin, and others, represent the Patents-in-Suit, several of which are nationally recognized and awarded. [Id. ¶¶ 64–71].

### B. **The Parties and Their Interests**

Plaintiff M&M is the owner and assignee of the '629 Patent and possesses the full and exclusive right to sue and recover damages for infringement thereof, including past, present, and ongoing acts of infringement. [Id. ¶ 28].[3] Plaintiff MSTM is the owner and assignee of the '458, '838, '648, and '909 Patents and possesses the full and exclusive right to sue for and recover damages arising from any infringement, including past, present, and ongoing acts. [Id. ¶¶ 29–32].[4] M&M markets and sells the technology known as the Atmospheric Solids Analysis Probe ("ASAP" or "ASAP Probe") that is embodied in the '629 Patent and MSTM distributes the ASAP Probe. [Id. ¶¶ 51, 53–54].

The '973, '096, and '894 Patents (collectively, the "Licensed Patents" or "University Patents"), invented by Drs. McEwen, Trimpin, and Pagnotii, have been assigned to the University of the Sciences ("USciences") and Wayne State University (collectively, the "Universities"). [Id. ¶ 33].[5] Pursuant to an exclusive worldwide license agreement between the Universities and MSTM, the Universities granted MSTM "all substantial rights" in the Licensed Patents, including the exclusive right to enforce, license, and recover damages for infringement. [Id. ¶¶ 33–36 (citing

---

[3] Plaintiff M&M was co-founded by Drs. Charles McEwen and Richard McKay. [Am. Compl. ¶ 4].
[4] Plaintiff MSTM was founded by Drs. Charles McEwen and Sarah Trimpin. [Id. ¶ 5]. Currently, Dr. McEwen serves as the President of MSTM and Dr. Trimpin is the Chief Executive Officer. [Id. ¶¶ 6–8].
[5] Dr. Trimpin is a Professor at Wayne State University. [Id. ¶ 72].

Ex. G (hereinafter "License Agreement"), ECF No. 36-7)]. In August 2015, MSTM amended its operating agreement to provide USciences with an ownership interest in MSTM. [Id. ¶ 39]. On December 12, 2022, and January 13, 2023, respectively, USciences and Wayne State formally acknowledged and consented to MSTM's exclusive right to assert and enforce the Licensed Patents against Defendant Waters Corporation. [Id. ¶ 36]. On May 3, 2023, M&M, MSTM, and the Universities entered into a Joint Defense, Allied Litigant, and Common Interest Agreement which granted "exclusive licensing (with all substantial rights)" to MSTM for the Licensed Patents and the ability, with consent from the Universities, to sue for infringement or unauthorized use of the Licensed Patents. [Id. ¶¶ 40–50 (citing Ex. K, (hereinafter "Joint CIA"), ECF No. 36-11)].

### C.  Sciex's NDA and Confidential Information

Sciex manufactures and sells mass spectrometry instruments throughout the United States. [Id. ¶ 15; Hr'g Tr. 13:14–17, ECF No. 68]. Drs. McEwen's and Trimpin's ionization technologies are widely recognized, and many companies, including Sciex, have sought their expertise. [Am. Comp. ¶ 10]. For many years, Sciex expressed interest in these technologies and in establishing a business relationship with MSTM. [Id. ¶ 11]. Plaintiffs assert that despite Sciex's interest in the technology, Sciex declined to license the Patents-in-Suit, but nevertheless, proceeded to manufacture, use, offer to sell within or import into the United States mass spectrometry devices and products that infringe the Patents-in-Suit. [Id. ¶¶ 13, 15, 17].

On May 15, 2015, Sciex executives executed a confidentiality agreement with Dr. McEwen to evaluate potential licensing, under which MSTM disclosed proprietary matrix-assisted ionization technologies and unpublished patent applications. [Id. ¶¶ 13, 19, 74–75]. Sciex repeatedly remarked on, engaged with, and supported the novel mass spectrometry ionization technologies in MSTM's Patents-in-Suit. [Id. ¶¶ 14, 57, 59, 73–78]. MSTM also communicated

about compounds for use with the patented technologies and received formal recognition from Sciex regarding the commercial potential of MSTM's NSF STTR Phase II proposal. [Id. ¶¶ 76–77]. [6] Sciex offered assistance in developing a MAI-Interface to integrate MSTM's technologies, which Plaintiffs argue, demonstrates both knowledge of and interest in the Patents. [Id. ¶¶ 78–81].

Between September and October 2015, Drs. Trimpin and McEwen visited Sciex to demonstrate MSTM's technologies under the NDA, providing patent summaries and documentation to members of Sciex. [Id. ¶¶ 82–86, 92, 94, 105–14]. While under the confidentiality agreement, and as part of these meetings, Dr. Trimpin photographed demonstrations of MSTM's MAIV ionization and proprietary methods, and Dr. Yves Le Blanc (Sciex) took notes and sketches reflecting confidential material. [Id. ¶¶ 94–97]. Plaintiffs assert that during these meetings, MSTM modified mass spectrometer instruments to demonstrate confidential techniques, examples, illustrations, and high-throughput applications, and Dr. Trimpin captured numerous photographs, which were shared with the Sciex team, documenting these demonstrations and proprietary methods. [Id. ¶¶ 98–114]. Sciex acknowledges that MSTM's demonstrations occurred in a confidential laboratory setting where proprietary information not disclosed in any patents was shared with their team. [Id. ¶ 210]. Following an internal investigation, MSTM discovered in August 2023 that Sciex's Echo MS System incorporated technical features consistent with the confidential demonstrations and discussions performed by

---

[6] MSTM received support from the National Science Foundation ("NSF") through its Phase I, Phase II, and Technology Enhancement for Commercial Partnership ("TECP") awards to advance and commercialize its mass spectrometry ionization technologies. [Am. Compl. ¶ 62]. The NSF's Small Business Innovation Research ("SBIR") and Small Business Technology Transfer ("STTR") programs provide TECP supplemental funding opportunities to assist Phase II awardees, such as MSTM, in commercializing their technologies. [Id. ¶ 63].

MSTM to Sciex under the NDA. [Id. ¶ 212]. Plaintiffs then filed their Amended Complaint to include trade secret claims.

## II.    PROCEDURAL HISTORY

On May 19, 2023, Plaintiffs M&M and MSTM filed their complaint against Defendant Sciex. [ECF No. 1]. Sciex filed a motion to dismiss on July 28, 2023. [ECF No. 28]. On August 28, 2023, Plaintiffs filed their amended complaint, [ECF No. 36], and Defendant Sciex filed a partial motion to dismiss under Rule 12(b)(6). [ECF No. 37]. Soon after, Plaintiffs filed their opposition, [ECF No. 52], and Sciex filed its reply, [ECF No. 53]. Plaintiffs were later granted leave to file a sur-reply to address Sciex's factual representations. [ECF No. 55].

A hearing on the motion to dismiss was held on April 24, 2024, [ECF No. 64]. This Court entered an electronic order on September 30, 2024, which denied the Motion to Dismiss, with memorandum to issue. [ECF No. 75].

## III.    LEGAL STANDARD

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). At the pleading stage, a plaintiff need not demonstrate that they are likely to prevail, "but [their] claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" García-Catalán v. U. S., 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 678)).

7

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)). The plausibility standard does not impose a probability requirement; it requires only enough facts to allow the Court to reasonably infer liability. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The Federal Circuit has made clear that in patent infringement cases, a plaintiff is not required to plead infringement on an element-by-element basis, and courts may not impose such a blanket requirement. Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021). The level of detail required in any given case will vary depending upon several factors, "including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." Id. at 1353.

## IV.    **DISCUSSION**[7]

Sciex in its motion to dismiss groups the Patents-at-Issue into three categories. Group One consists exclusively of Count I alleging direct, induced, and contributory infringement of Patent '629. [ECF No. 38 at 7]. Defendants bring a motion to dismiss as to this Count only for allegations of contributory infringement. [Id. at 23–24]. Group Two, Counts II-IV, includes the "University Patents," Patent Nos. '973, '096, and '894. [Id. at 7]. These patents are assigned to Wayne State University and the University of the Sciences, and as early as 2018, Plaintiff MSTM, has practiced

---

[7] To avoid confusion, the Court uses "cause of action" when referring to Plaintiff's allegations and uses "claim" in the patent sense. The term "claim" in the patent context holds a dual meaning. "Claim" might refer to a "cause of action," or it might refer to the portion of a patent that follows the patent's specification and defines the scope of the patentee's monopoly. Senju Pharm. Co. v. Apotex Inc., 746 F.3d 1344, 1349 (Fed. Cir. 2014).

8

an exclusive license of the University Patents. [Id.] Defendant argues that the Plaintiffs lack statutory standing to pursue an infringement action for the University Patents.

Finally, Group Three, Counts V-VIII, allege direct, induced, and contributory infringement of Patent Nos. '458, '909, '838, and '648. These patents are assigned to MSTM and are known as "matrix-assisted ionization vacuum" or "MAIV" technology. [Id. at 8].

A.  **COUNTS II-IV: Statutory Standing**

Defendant Sciex argues that Plaintiffs are not the patentee of the University Patents related to Counts II-IV and therefore do not have statutory standing to bring their patent infringement claims unless the Universities are included as co-plaintiffs in this action. [ECF No. 38 at 11–16]. Defendant does not bring a 12(b)(7) claim to join the Universities, it only wishes for the dismissal of these claims. [Id.] Plaintiffs assert that they have proper statutory standing due to an exclusive license agreement and a subsequent Joint Defense, Allied Litigant, and Common Interest Agreement ("Joint CIA"). In the alternative of a dismissal, the Plaintiffs request an opportunity to join the Universities as co-plaintiffs. [ECF No. 52 at 7–11].

The Federal Circuit has established that motions to dismiss for statutory standing are properly brought under Fed. R. Civ. P. 12(b)(6) rather than a 12(b)(1) motion because the argument does not implicate the court's subject matter jurisdiction or constitutional power to adjudicate the case but is an issue of statutory right. AnywhereCommerce, Inc. v. Ingenico, Inc., 517 F. Supp.3d 45, 48–49 (D. Mass. 2021) (citing Lone Star Silicon Innovations LLC v. Nanya Tech. Corp., 925 F.3d 1225, 1235–36 (Fed. Cir. 2019)); see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014) (noting that "statutory standing" does not implicate subject matter jurisdiction, which would limit the Court's constitutional power to adjudicate the case.)

Normally, only "[t]he owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot." Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed. Cir. 2005) (quoting Calgon Corp. v. Nalco Chem. Co., 726 F.Supp. 983, 985 (D. Del. 1989)). A "patentee" may bring a civil action for patent infringement under 35 U.S.C. § 281. The term patentee includes the original patentee, whether the inventor or original assignee, and "successors in title." 35 U.S.C. § 100(d). This statutory standing to sue "does not include mere licensees," but does include exclusive licensees who have been assigned "all substantial rights" in the patent since, in such cases, "the transferee is treated as the patentee and has standing to sue in its own name." First citing Lone Star Silicon Innovations LLC, 925 F.3d at 1229; and then citing Propat Int'l Corp. v. Rpost, Inc., 473 F.3d 1187, 1189 (Fed. Cir. 2007) (internal citations omitted). "If, however, the transferee or licensee does not hold all substantial rights, it may 'sue third parties only as a co-plaintiff with the patentee.'" Alps S., LLC v. Ohio Willow Wood Co., 787 F.3d 1379, 1382–83 (Fed. Cir. 2015); (quoting Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed. Cir. 2001)).

To determine whether a patent was assigned or licensed, the Court must determine the "substance of what was granted rather than formalities or magic words." Lone Star Silicon Innovations LLC, 925 F.3d at 1229 (citing Waterman v. Mackenzie, 138 U.S. 252, 256 (1891)); see also Alfred E. Mann Found. For Sci. Research v. Cochlear Corp., 604 F.3d 1354, 1359 (Fed. Cir. 2010) (collecting cases). The Court must "examine the 'totality' of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent." Lone Star Silicon Innovations LLC, 925 F.3d at 1229 (quoting AsymmetRx, Inc. v. Biocare Med., LLC, 582 F.3d 1314, 1321 (Fed. Cir. 2009)).

In the present case, the parties have spent significant pages of their briefing on this issue, however, the Court does not see this as a difficult question and will not spend more time than necessary on its analysis. Sciex argues that MSTM does not retain all substantial rights because Plaintiff must seek approval from the Universities to sue for patent infringement. [ECF No. 38 at 13; Am. Compl. ¶ 36]. Sciex relies on Immunex Corp. v. Sandoz Inc., 964 F.3d 1049, 1060–62 (Fed. Cir. 2020), arguing that an exclusive licensee under similar circumstances did not retain all substantial rights to be considered a patentee. [ECF No. 38 at 12–13]. This case is easily distinguishable, as the issue before the court was a matter of whether an "all substantial rights" test could be extended to suits on obviousness-type double patenting, where the Defendant argued a "novel theory of common ownership." Immuex Corp., 964 F.3d at 1057. At no point in the court's order did it discuss the issue of statutory standing, or apply facts similar to this case, where an exclusive licensee had express consent to sue on behalf of the Patent owners for the Licensed Patents. See id.

Defendant also argues that the Universities retained their right to practice the patents themselves, to license the patents to third parties, to maintain title of the Patents, and the first right to defend the patents if challenged, therefore a *complete* transfer or assignment of the University Patents did not occur in this case. [ECF No. 38 at 10–11 (emphasis added)].

Plaintiffs' argument for statutory standing relies on the existence of the inter-institutional agreement ("IIA") between Wayne State and USciences, which outlines the authority to license the University Patents, in combination with the 2018 exclusive license agreement to the '973, '096, and '894 Patents, [Am. Compl. ¶¶ 33–35 (citing License Agreement)], and the Joint CIA signed in May 2023 which grants "all substantial rights" to MSTM and the ability to pursue litigation efforts with the consent of the Universities. [Id. ¶¶ 36–50].

11

A court may not look to the "magic words" such as "all substantial rights" in a contract to determine whether the parties agreed to an assignment or license but must look to the totality of the agreement. Lone Star Silicon Innovations LLC, 925 F.3d at 1229. Plaintiffs assert that the agreement between the Universities and MSTM affords the Universities with limited rights to non-commercial uses, such as academic functions of "internal research, academic collaborative, teaching and educational purposes," and allows the Universities the opportunity to sue "*if and only if* MSTM declines" to pursue litigation. [ECF No. 52 at 10 (citing License Agreement) (emphasis in original)]. Plaintiff argues that the fact the University has a right to pursue litigation when MSTM refuses to do so is not at issue in this case and is a hypothetical limitation on the Plaintiffs' rights to pursue this action. [Id. at 11 (citing PerkinElmer Health Scis., Inc. v. Algient Techs., Inc., 932 F.Supp.2 207, 210 (D. Mass. 2013))] Plaintiffs have the explicit consent from the Universities to pursue this action against Defendant Sciex. [See Joint CIA, ECF No. 36-11 at 2 (". . . MSTM has, pursuant to the License Agreement, obtained consent from WSU and SJU to pursue any resolution of alleged infringement or unauthorized use of the Licensed Patents by . . . AB Sciex LLC.")]. Additionally, Plaintiffs point to the exclusive license which grants MSTM with "the exclusive right to make, have made, use, lease, distribute, import, sell and have sold Licensed Products," which is the "central consideration" for the Court in determining whether the licensee has a right to sue in a patent infringement action. [Id. at 13 (quoting AnywhereCommerce, 517 F. Supp.3d at 52 (emphasis omitted))]

The Court finds that the exclusive license agreement, in combination with the Joint CIA is sufficient to grant statutory standing for the Plaintiffs in this action. Viewing the IIA, exclusive license agreement, and Joint CIA holistically, the Court would be remiss to preclude these claims on a doctrine of statutory standing. There is no threat to successive or duplicative infringement

suits from the Universities, and the rights assigned to MSTM are substantive and relevant for the commercial suit before the Court. See e.g., Vaupel Texilmaschinen KG v. Meccanica Euro Italia S.PA., 944 F.2d 870, 875–76 (Fed. Cir. 1991) (the policy "to prevent the possibility of two suits on the same patent against a single infringer" which underlies the standing requirement is "not undercut" where "right to sue rested solely with [the licensee]"); see also Unique Coupons, Inc. v. Northfield Corp., 12 F. App'x. 928, 934 (Fed. Cir. 2001) (holding that where the original patentee was "unlikely to have an interest in the litigation separate from [the sole licensee]'s or bring a second suit on the same patents" thus, there was no risk of duplicative litigation). The retention of the Universities' right to protect its commercial interests of the Licensed Patents if MSTM *fails to do so*, does not limit MSTM's right to pursue litigation, nor is that the reality of the action before the Court.

Sciex does not bring a motion for joinder under 12(b)(7), nor is the issue whether the Universities are necessary parties properly briefed before the Court to make such a ruling. [See ECF No. 38 at 7–12; ECF No. 52 at 6–7, 16]. There is significant overlap between the inventors of these Patents, the Plaintiffs in this action, and the University-assignees of the Patents at issue, therefore the Court presumes that the Universities have been properly noticed of these actions and have chosen not to join the fray. [See *supra* I.A–B; Joint CIA]. Based on the information provided, the Court is convinced that the Plaintiffs have been assigned all relevant rights to the Licensed Patents to pursue this action and will not preclude these counts due to the Universities' absence.

For the reasons stated, the Motion to Dismiss as to statutory standing for Counts II-IV is **DENIED.**

**B.   COUNTS V-VIII: Direct and Indirect Patent Infringement**

Plaintiff alleges that in lieu of obtaining a formal license to the MAIV Patents, Defendants used the information which was confidentially disclosed in presentations, emails, and meetings, to develop products which practice one or more claims of each of the MAIV Patents. [Am. Compl. ¶ 19]. Defendants move this Court to dismiss all causes of action of direct infringement – and, in effect, dismiss all indirect and contributory infringement causes of action – for the MAIV Patents because the Plaintiffs have not cited specific direct infringement of the products. [ECF No. 38 at 17–23]. Defendant's arguments in part introduce issues of claim construction for the Patents-at-Issue with the alleged infringing products.

Direct patent infringement occurs when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefore." 35 U.S.C. § 271(a). For direct infringement under 35 U.S.C. § 271(a), a plaintiff must allege that the accused product or method practices all limitations of at least one asserted claim, and where method claims are involved, that all steps are performed by or attributable to a single entity. Sunrise Techs., Inc. v. Cimcon Lighting, Inc., 219 F. Supp. 3d 260, 263 (D. Mass. 2016); see Rampage LLC v. Global Graphics SE, No. 16-CV-10691-ADB, 2017 WL 239328, at *3 (D. Mass. Jan. 19, 2017).

Precedent in the First and Federal Circuits does not require that a plaintiff plead infringement on an element-by-element basis, or "prove its case" at the motion to dismiss stage, and courts may not impose such a blanket requirement. Bot M8 LLC, 4 F.4th at 1352 (quoting Nalco Co, 883 F.3d at 1350). "On a motion to dismiss, the Court's role is to 'test the sufficiency of the complaint, not to decide the merits' 'without the benefit of claim construction.'" DS Advanced Enterprises v. Ledvance LLC, 775 F. Supp.3d 599, 607 (D. Mass. 2015) (quoting Nalco

Co., 883 F.3d at 1350 (emphasis omitted) (citation omitted)). Instead, it is enough "that a complaint places the alleged 'infringer on notice of what activity is being accused of infringement.'" Nalco Co, 883 F.3d at 1350 (quoting K-Tech Telecomm., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1284 (Fed. Cir. 2013)).

A properly pleaded allegation of direct infringement is a threshold requirement for indirect infringement. See In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1333 (Fed. Cir. 2012). Knowledge is a required element for both indirect and willful infringement claims. See Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1273 (Fed. Cir. 2004) ("[A] plaintiff . . . must [] establish that the defendant possessed the requisite knowledge or intent to be held [] liable.") (internal citations omitted); see also WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1340 (Fed. Cir. 2016) (explaining the importance of "assessing the infringer's knowledge at the time of the challenged conduct") (internal citations omitted). Knowledge of a patent can be demonstrated by a totality of the circumstances analysis, WCM Indus., Inc. v. IPS Corp., 721 F. App'x 959, 970 (Fed. Cir. 2018), and it can be proven using circumstantial evidence, SiOnyx, LLC v. Hamamatsu Photonics K.K., 330 F. Supp. 3d 574, 608–10 (D. Mass. 2018). In this Circuit, indirect and willful infringement claims require actual, pre-suit knowledge of the patent; the complaint itself cannot supply that knowledge. Canon, Inc. v. Avigilon USA Corp. Inc., 411 F. Supp. 3d 162, 164–66 (D. Mass. 2019). Willful infringement further requires plausible allegations that the defendant knew of the patent and knew of its infringement. Id. at 165.

Sciex manufactures and sells mass spectrometry instruments that can be configured with components such as the SelexIon system, D-Jet system, OptiFlow Turbo V system, Intabio ZT system, and Echo MS system. [Am. Compl. ¶¶ 127, 137, 147, 157, 167, 177, 187, 197]. These

components are incorporated into various models and operate as part of integrated analytical devices. [Id.] Sciex provides customers with instructional materials, manuals, demonstrations, educational content, online resources, and technical support, including a registered-user training portal. [Id. ¶¶ 130, 140, 150, 160, 170, 180]. These instruments are sold in the United States, and customers employ them for analytical applications. [Id.]

Under the confidentiality agreement, Sciex's use of MSTM's confidential information was limited to assessing licensing interest and exploring potential business relationships. [Id. ¶ 88]. Sciex was prohibited from using or disclosing MSTM's trade secrets or other confidential information. [Id. ¶ 224]. Plaintiffs argue that Sciex's unauthorized use included manufacturing, offering for sale, selling, and importing mass spectrometer devices that relied on MSTM's confidential methods – including the open-port interface with a common-axis capillary, direct analyte introduction via droplet ejection, and optimized parameters for sample capture and transfer – features disclosed only under NDA-protected demonstrations and discussions. [Id. ¶¶ 248–52, 263–65].

The Amended Complaint asserts that Sciex directly infringes on the MAIV products through the development and use of Sciex's competitive mass spectrometers with SelexION, D-Jet, OptiFlow Turbo, Intabio ZT, or Echo MS technology installed, and that the Defendant takes "active steps to encourage and facilitate third parties," (*e.g.*, Sciex's customers of the accused Sciex MS Devices), "to directly infringe one or more claims" of the MAIV Patents. [Id. ¶¶ 167–170, 177–180, 187–190, 197–200]. Part of the allegation of indirect infringement, or facilitating the infringement, is Sciex's training website which "provides registered customers access to training materials" for Sciex's products, which Plaintiffs allege infringe on their Patents. [Id. ¶¶ 170, 180, 190, 200]. In support of their allegations, Plaintiffs attach claim charts, emails,

presentations, and letters of support documenting the long-standing academic and corporate relationship between Sciex, MSTM, and the inventors involved in this case. [See *supra* I.A.–B; Am. Compl. ¶¶ 120].

Defendant does not present any arguments to the Court that it did not have knowledge of the Patents-in-Suit prior to this action. [See ECF No. 38 at 16–23]. Sciex's arguments largely focus on whether the Sciex MS products incorporate, or whether Sciex provides, the MAIV matrices, a "required step" for direct infringement to occur, and whether the Plaintiffs have adequately pleaded specific instances of direct infringement. [Id. at 13–14]. Sciex argues that the specific examples of technology demonstrations, NSF Grant Letters, knowledge of Patent Applications, and scientific articles or webpages are insufficient to prove direct infringement of the MAIV patents. [Id. at 15–19]. Sciex is correct, however, at this preliminary stage in these proceedings, the burden is not to prove infringement, but to plead beyond the threshold of plausibility. See DS Advanced Enterprises, 775 F. Supp.3d at 607.

After careful review of the filings and argument, the Court determines that there is sufficient information asserted throughout the Amended Complaint to support that Sciex and MSTM had a long-term professional relationship spanning over the course of a decade. In that relationship, information regarding registered patents, patent applications, and ongoing scientific innovation was shared between the parties under confidential agreements, and Sciex was aware of the patent applications and the technology at issue in this case. [See *supra* I.A.– B]. Plaintiffs note specific interactions with employees of Sciex which detail first-hand knowledge of the Patents-in-Suit years prior to litigation and plausibly allege that their confidential technology now exists in the products that Sciex distributes. [Id.] Determining whether the Sciex MS products perform the required step of providing the required matrix compounds, or whether Sciex or its customers

perform the claimed method steps from the Plaintiffs' Patents, are questions for the claim construction hearing, technical experts, and the discovery process.

The Court concludes that the allegations and the attached claim charts, (Am. Compl. Ex. S–V), give fair notice of the infringement alleged and do not contradict liability. See Bot M8 LLC, 4 F.4th at 1352. At this stage in the proceedings, Plaintiffs have plausibly alleged infringement of these patents, and Sciex's motion will accordingly be **DENIED**.

## C. **COUNTS I-VIII: Contributory Infringement**

Defendant's arguments for contributory infringement hinge on notions of claim construction, and whether the accused devices have "no substantial non-infringing use." [ECF No. 38 at 23 (citing In re Bill of Lading, 681 F.3d at 1337)].

Inducement or contributory infringement can only occur when there is "'an underlying act of direct infringement.'" In re Bill of Lading, 681 F.3d at 1333 (quoting Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1326 (Fed. Cir. 2004)). Contributory infringement occurs if a party sells, or offers to sell,

> a component of a patented . . . combinations, . . . or a material . . . for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

35 U.S.C. § 271(c).

Similar to indirect infringement claims, contributory infringement "requires knowledge of the patent in suit and knowledge of patent infringement." Nalco Co., 883 F.3d at 1356–57 (quoting Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 639 (2015); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488 (1964)). To succeed on a contributory infringement

claim, it is not necessary for the plaintiff to prove a defendant's intent to infringe, only their knowledge "'that [their] activity cause[s] infringement.'" Id. at 1357 (first citing Lifetime, 869 F.3d at 1381, then, Hewlett–Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990)).

Defendant argues that the products it sells have substantial non-infringing uses, arguing that the exhibits attached to the Amended Complaint "show that the accused devices are either not part of the ionization process at all or are specifically designed for electrospray ionization (ESI)." [ECF No. 38 at 23]. Plaintiffs adamantly object to the representation of the devices and the hardware at issue in this case made by Sciex, asserting that any factual inquiries about these Patents should not be resolved by a motion to dismiss, but requires expert testimony. [ECF No. 52 at 22–25].

In a case with technology as complex as presently before the Court, plaintiffs are correct in asserting that contributory infringement claims which hinge on claim construction, absent a claim construction hearing, are premature before this Court. See Nalco Co., 883 F.3d at 1350. Similar to the analyses made for the direct and indirect infringement claims, this Court believes that the Plaintiffs have satisfied their burden of pleading plausibility at this stage. See DS Advanced Enterprises, 775 F. Supp.3d at 607.

Therefore, the Motion to Dismiss as to Contributory Infringement claims in Counts I-VIII are **DENIED.**

### D.  **COUNT XII: Unjust Enrichment**

Plaintiff brings a claim of unjust enrichment, asserting that MSTM conferred a benefit on Sciex via trade secrets and other confidential information; Sciex accepted the benefit conferred by

MSTM; and Sciex retained the benefit, such as by improving its products and taking advantage of MSTM's know-how, including MTSM's trade secrets and confidential proprietary information; without proper payment for their value. [Am. Compl. ¶¶ 255–57]. Defendant moves this Court to dismiss Plaintiffs' unjust enrichment cause of action because they have other adequate remedies at law for the alleged misappropriation of trade secrets, breach of contract, and violation of Chapter 93A causes of action. [ECF No. 38 at 24]. Initially, the Court was persuaded by Plaintiffs' arguments, however, upon an additional review of the pleadings, it is clear that the Court must **GRANT** the motion to dismiss as to this claim. This memorandum supersedes the Court's previous ruling, [ECF No. 75].

"Under Massachusetts law, a claim for unjust enrichment requires there be 'unjust enrichment of one party and unjust detriment to another party.'" Timmins Software Corp. v. EMC Corp., 502 F.Supp. 3d 595, 603 (D. Mass. 2020) (citing Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc. (II), 552 F.3d 47, 57 (1st Cir. 2009), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009) ("Massachusetts courts have recognized that misuse of confidential information may lead to unjust enrichment.")). Unjust enrichment provides "an equitable stopgap" by requiring a "person who has been unjustly enriched at the expense of another . . . to make restitution to the other." Mass Eye. & Ear Infirmary v. QLT Phototherapeutics, Inc. (I), 412 F.3d 215, 234 (1st Cir. 2005) (citing Fox v. F & J Gattozzi Corp., 672 N.E.2d 547, 552 (Mass. App. Ct. 1996)). To state a cause of action for unjust enrichment under Massachusetts law, "a plaintiff must prove '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances [which] would be inequitable without payment for its value.'" AnywhereCommerce, Inc, 665 F. Supp. 3d at 199 (alteration in original) (quoting

Mass. Eye & Ear Infirmary (II), 552 F.3d at 57). To proceed, the benefit must be "conferred upon the defendant by the plaintiff." See Blake v. Pro. Coin Grading Serv., 898 F. Supp. 2d 365, 390 (D. Mass. 2012) (quoting Mass. Eye & Ear Infirmary (II), 552 F.3d at 57).

In response to Defendant's Motion to Dismiss, Plaintiffs argue that under the Federal Rules of Civil Procedure, a plaintiff may "plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs only can recover under one of those theories." [ECF No. 52 at 25 (quoting Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012); citing Fed. R. Civ. P. 8(d))]. However, "this argument misapprehends the relevant law." Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017) (rejecting plaintiff's alternative pleading argument that "if her [claims other than unjust enrichment] are dismissed, she effectively has no adequate remedy"). It is settled doctrine in Massachusetts that a cause of action for unjust enrichment is an equitable remedy meant as a "stopgap for occasional inadequacies in contractual remedies at law," Mass. Eye & Ear Infirmary (I), 412 F.3d at 234, or causes of action sounding in tort liability. See Asetllas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc., 458 F.Supp.3d 95, 106 (D. Mass. 2020) (noting that misappropriation of trade secrets underlying an unjust enrichment claim sounds in equity as a tort claim).

When a plaintiff has an adequate remedy at law – such as here through causes of action under trade secrets misappropriation, breach of contract, or Chapter 93A – the plaintiff cannot also proceed under a theory of unjust enrichment. See Tomasella v. Nestlé USA, Inc., 364 F.Supp. 3d 26, 37 (D. Mass. 2019); Fernandes v. Havkin, 732 F. Supp.2d 103, 114 (D. Mass. 2010) ("Plaintiff's negligence and chapter 93A claims thus preclude a claim for unjust enrichment."). Nor are arguments related to the viability of those causes of action persuasive, as it is "the *availability* of a remedy at law, not the *viability* of that remedy, that prohibits a claim for unjust

enrichment." Shaulis, 865 F.3d at 16 (citing Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 334 (D. Mass. 2012) (emphasis added)); Tomasella, 364 F.Supp. 3d at 37 ("[A] plaintiff who has an adequate remedy at law cannot maintain a parallel claim for unjust enrichment, even if that remedy is not viable."); see also One Wheeler Road Assocs. v. Foxboro Co., 843 F.Supp. 792, 799 (D. Mass. 1994) (common law and statutory reimbursement remedies are adequate remedies at law that preclude unjust enrichment claims).

Here, Plaintiffs assert the same allegations for unjust enrichment as for their trade secrets misappropriation, breach of contract, and Chapter 93A causes of action. [Am. Compl. ¶¶ 254–57]. Those other causes of action are available as an adequate remedy at law for the same conduct, therefore, Plaintiffs are precluded under Massachusetts law from bringing an additional unjust enrichment cause of action. See Shaulis, 865 F.3d at 16; Tomasella, 364 F.Supp. 3d at 37.

For the reasons stated above, the Motion to Dismiss as to Count XII is **GRANTED.**

## V.    **CONCLUSION**

In accordance with the foregoing, Defendant's Motion to Dismiss, [ECF No. 37], is **DENIED IN PART** and **GRANTED IN PART.**

**SO ORDERED.**

Dated: March 10, 2026

    /s/ Margaret R. Guzman
    Margaret R. Guzman
    United States District Judge