**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MSTM, LLC and M&M MASS SPEC CONSULTING, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AB SCIEX, LLC,<br><br>Defendant. | Civ. No.: 1:23-cv-11121-MRG |

**ORDER ON DEFENDANT'S PARTIAL MOTON TO DISMISS THE SECOND AMENDED COMPLAINT [ECF No. 160]; AND PLAINTIFFS' MOTION TO COMPEL [ECF No. 128]**

**GUZMAN, J.**

Plaintiffs MSTM, LLC ("MSTM") and M&M Mass Spec Consulting, LLC ("M&M") (collectively, "Plaintiffs") filed this patent infringement action against Defendant AB Sciex, LLC ("Sciex" or "Defendant"), after their confidential, collaborative business relationship soured. Plaintiffs allege, in short, that Defendant took advantage of Plaintiffs' renowned expertise and willingness to teach in the innovative field of mass spectrometry, resulting in the misuse of Plaintiffs' trade secrets, a breach of contract, and violation of U.S. Patent Law. This case has been before this session for several years and the parties are in the midst of the discovery process.

Currently before the Court, is Defendant's partial motion to dismiss of the Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), where Defendant challenges the added claim of infringement under 35 U.S.C. § 271(f) ("Section 271(f)") and the previously dismissed claim of unjust enrichment. [See Second Am. Compl. ("SAC"), ECF No. 159; ECF No. 160].

Related to whether Plaintiffs have asserted sufficient facts to plausibly state a claim for relief under Section 271(f), is the issue of Plaintiffs' pending motion to compel, and whether foreign sales data for the Accused Products in this suit are discoverable. Plaintiffs are seeking discovery as to foreign sales information related to the Accused Products, including sales generated from products or components sold, and services associated with the Accused Products including service, repair, and maintenance. [See ECF No. 128]. A hearing was held on these discovery issues on March 18, 2026. [ECF No. 139]. Given that the Second Amended Complaint is now operative, the Court reviews the pending Motion to Compel within its framework.[1]

For the reasons stated below, Defendant's partial motion to dismiss is **DENIED IN PART** and **GRANTED IN PART** and Plaintiffs' Motion to Compel is **GRANTED.** [2]

## I. BACKGROUND

The following relevant facts are taken primarily from the allegations in Plaintiffs' Second Amended Complaint and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."). All plausible inferences are made in Plaintiffs' favor. Id. The relevant facts and procedural history are outlined in detail in the Court's Order on Defendant's Motion to Dismiss the Amended Complaint, [ECF No. 136]. This Order adopts the

[1] Plaintiffs initially filed their Motion to Compel prior to filing the Second Amended Complaint. During the Motion Hearing in March 2026, there was robust discussion as to issues of discovery regarding unpled Section 271(f) claims and Sciex products. It is the Court's perspective that filing the Second Amended Complaint, which includes Section 271(f) claims and additional Accused Products, cures the Court's initial hesitation as to these issues.

[2] The Court notes the similarity between the filings in this case and the concurrent action, MSTM, LLC et al v. Waters Corp., 4:23-cv-40027-MRG. The parties present similar arguments in both cases and, consequently, the Court's orders between these cases are substantially similar.

previously considered history of the case and incorporates the additional facts presented in the Second Amended Complaint.

### A. **Relevant Facts**[3]

Plaintiffs' Second Amended Complaint asserts a claim of patent infringement under 35 U.S.C. §§ 271(f)(1)–(2) for each Patent-in-Suit, [SAC at 65–69], includes additional infringing Accused Products, and inserts language in support of infringement within the United States and "worldwide" throughout the filing. [See SAC]. In support of their new claim, Plaintiffs allege that Sciex's U.S. based activities (*e.g.*, offering for sale, manufacturing, shipping, and distribution) related to the Accused Products, are the direct and proximate cause of all of Sciex's sales of the Accused Products to foreign customers, and that Defendant exports products and/or components abroad that, when assembled, infringe on Plaintiffs' Patents. [See SAC ¶¶ 284–307].

Plaintiffs' supplemented facts rely heavily on the sworn declaration made by Product Manager Susan Darling-Maars submitted on March 9, 2026. [See SAC ¶¶ 286–91, 293–94; ECF No. 137-1].[4] Darling-Maars stated in the declaration that Sciex ships its manufactured products to global distribution centers before they are delivered to end customers. These products pass through a distribution center in Coppell, Texas, which then ships the products to customers in the United States, Canada, Mexico, Central America, and South America. [SAC ¶ 290]. According to the SAC, the Accused Products that are shipped from the United States to customers outside the United

---

[3] All pin cites for citations to the docket refer to the ECF pagination appearing at the top of the documents filed.

[4] It is well established that in evaluating a motion to dismiss, a court may consider documents attached to the complaint or expressly incorporated therein. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). In the present matter, that includes Darling-Maars' Affidavit, [ECF No. 137-1], Exhibits 1–30 appended to the Second Amended Complaint, and Exhibits O–V attached to the First Amended Complaint, [ECF No. 36]. [SAC ¶¶ 284–307].

States are shipped as components.[5] When these components are shipped abroad, Sciex provides its customers with instructions detailing how to assemble the components of the Accused Products. [Id. ¶ 292]. Plaintiffs state that "Sciex . . . admits that it ships infringing components made in the United States to its foreign subsidiaries, including in Singapore, for final assembly and testing of many of its products, including the [Accused Products.]" [Id.] Additionally, Sciex manufactures and/or produces mass spectrometry products in Singapore and China and ships these products into the United States where they are showcased, promoted, and demonstrated to customers. [Id. ¶¶ 287, 293–94, 296]. In particular, Plaintiffs allege that Sciex offers for sale, and sells, its mass spectrometry products and components to those in attendance for the American Society for Mass Spectrometry ("ASMS") conference. [Id. ¶ 298].

Finally, Plaintiffs allege that Sciex manufactures, assembles, and/or sells certain accused mass spectrometry products, including at least the Intabio product line in California, and exports both the manufactured instrument and components to foreign countries via US-based distribution centers. These components are then assembled into infringing products whereafter they are distributed and used abroad. [Id. ¶ 305].

---

[5] The Court carefully reviewed the affidavit to which Plaintiffs rely so heavily in their Second Amended Complaint. [ECF No. 137-1]. The Court finds the affidavit devoid of any reference to *components* of the Accused Products being manufactured in the United States and shipped abroad – excluding the Intabio ZT System where the affidavit states,

> I have been informed by counsel that [Plaintiffs] have *alleged* that certain Sciex instruments (when used alone and/or in connection with other ion sources or components/devices such as the SelexIon or D Jet) infringe Plaintiffs' patents and/or incorporate their trade secrets.

[Id. ¶ 5 (emphasis added)]. This is a statement made regarding a *representation* of Plaintiffs' counsel, and not an assertion that components are shipped abroad for assembly. Given that these assertions are ultimately an issue of fact and may be proved by other exhibits presented to the Court, or supported by matter found in the discovery process, the Court will not weigh the evidence or resolve competing inferences at the motion to dismiss stage.

**B. Procedural History**

This Court entered an electronic order on September 30, 2024, which denied the Motion to Dismiss the First Amended Complaint. [ECF No. 75].[6] Subsequently, the parties engaged in discovery on the pending matters. In September 2025, Plaintiffs filed their first Motion to Compel on issues involving Sciex's "limited scope" of responsive documents as to the Accused Products related to marketing, technology, and communications with Plaintiffs or the Universities related to this suit. [ECF Nos. 106, 107]. After briefing from both parties, the Court deemed the request to be premature as the parties had yet to exchange ESI search terms, had engaged in one meet and confer on the issues—where neither party broached the topic of foreign sales—and the parties represented that they were actively engaged in narrowing the scope of discovery. [ECF No. 110]. Shortly thereafter, the parties filed their briefings for the approaching Markman Hearing. [ECF Nos. 116–20, 124–25].

In February, Plaintiffs renewed their Motion to Compel, asserting many of the same issues as previously introduced to the Court. [ECF Nos. 128–29, 132–34, 137–38, 140]. The Court heard oral argument as to the Motion to Compel on March 18, 2026. [ECF No. 139]. During the hearing, and in their pleadings, Plaintiffs indicated that they intended to file a Second Amended Complaint, pursuant to the parties' joint scheduling order, [ECF No. 91 at 6], given that there were additional products and allegations presented during the discovery process which were pertinent to Plaintiffs' claims. In April 2026, the Court held one technology tutorial and two days of a "claim construction" or Markman Hearing. [ECF Nos. 144, 150, 153].

---

[6] The later published memorandum of law in support of the Court's reasoning modified the Court's determination as to the Unjust Enrichment claim, determining that the Motion to Dismiss must be granted as to Count XII. [See ECF No. 136 at 19–22].

Plaintiffs filed their predicted Second Amended Complaint in May 2026. [See SAC]. Defendant promptly filed a partial motion to dismiss, supplemented by exhibits and memorandum, and Plaintiffs opposed the motion with the same. [ECF Nos. 160–64, 166–68, 170–71, 173].

## II. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)). The plausibility standard does not impose a probability requirement; it requires only enough facts to allow the Court to reasonably infer liability. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

In a patent infringement case, the level of detail required in any given case will vary depending upon several factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claims, and the nature of the allegedly infringing device. Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1353 (Fed. Cir. 2021).

### B. Motion to Compel Standard

Federal Rule of Civil Procedure 26(b)(1) governs discovery practices, instructing that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's

claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Relevance for purposes of discovery is construed broadly, but it is not without limits. Bonner v. Triple S Mgmt. Corp., 68 F.4th 677, 684 (1st Cir. 2023) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The determination of what is relevant for discovery purposes depends on the parties' claims and defenses; however, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Virtek Vision Int'l Inc. v. Assembly Guidance Sys., Inc., 344 F.R.D. 141, 144 (D. Mass. 2023) (citing FED. R. CIV. P. 26(b)(1)). Information sought by the parties during this stage in litigation must not only be relevant to the claims and defenses in the case but also must be proportional, or "reasonably calculated to lead to the discovery of admissible evidence." Bonner, 68 F.4th at 685 (quoting Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 52 (1st Cir. 2009)).

## III. DISCUSSION[7]

### A. Partial Motion to Dismiss for Failure to State a Claim

#### i. COUNT XIV: Infringement under 35 U.S.C. § 271(f)

To prevail on a cause of action of direct infringement under 35 U.S.C. § 271(a)—which governs domestic infringement—Plaintiffs must demonstrate that Defendants made, used, offered to sell, or sold within the United States any patented invention during the term of the patent. 35 U.S.C. § 271(a). Liability for direct infringement can also occur if Plaintiffs demonstrate that a patented invention is imported into the United States. Id. Alternatively, a company may be held

[7] To avoid confusion, the Court uses "cause of action" when referring to Plaintiffs' allegations and uses "claim" as defined under patent law. The term "claim" in the patent context holds a dual meaning. "Claim" might refer to a "cause of action," or it might refer to the portion of a patent that follows the patent's specification and defines the scope of the patentee's monopoly. Senju Pharm. Co. v. Apotex Inc., 746 F.3d 1344, 1349 (Fed. Cir. 2014).

liable under Section 271(f), "if it ships components of a patented invention oversees to be assembled there." WesternGeco LLC v. ION Geophysical Corp., 585 U.S. 407, 409 (2018).

In 1984, Congress enacted Section 271(f) to close a loophole in patent protection, identified in the case of Deepsouth Packing Co. Inc. v. Laitram Corp., 406 U.S. 518 (1972). The Supreme Court in Deepsouth held that a company which exported unassembled components of a patented product abroad, which then assembled, used, and sold the product abroad, was not liable for patent infringement under the Patent Act as it was not an infringement that occurred "within the United States." See 406 U.S. at 527, 531; 35 U.S.C. § 271(a); Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 576 F.3d 1348, 1360 (Fed. Cir. 2009) (outlining the history of Section 271(f) in Federal Circuit and Supreme Court jurisprudence and overruling prior case law as to method claims and Section 271(f) infringement).

Thereafter, Courts have understood the purpose of § 271(f) as to hold liable manufacturers which intentionally sell unassembled components of a patented product abroad to be assembled there for use, sale, and manufacture. See, e.g., Patent Law Amendments of 1984, S. Rep. No. 98-663, pp 2–3 (1984). As noted in WesternGeco, Section 271(f) "expands the definition of infringement to include supplying from the United States a patented invention's components." 585 U.S. at 410 (citing Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 444–45 (2007)). The provision provides that, "a company 'shall be liable as an infringer' if it 'supplies' certain components of a patented invention 'in or from the United States' with the intent that they 'will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.'" Id. at 415 (citing Section 271(f)(2)). The enactment of Section 271(f) "'was a direct response to a gap in our patent law, . . . and 'reach[es] components that are manufactured in the United States but assembled overseas." Id. (citing first Microsoft Corp., 550 U.S. at 475, then

citing Life Techs. Corp. v. Promega Corp., 580 U.S. 140, 151 (2017)). Section 271(f) provides as follows:

> (1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
>
> (2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f). However, a manufacturer may only be liable under Section 271(f)(1) if "a substantial portion" of the components are supplied domestically. The Supreme Court has held that a single component, even if important or essential, to a multicomponent invention is not an infringing act under Section 271(f) unless it is "especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use." See Life Techs., 580 U.S. at 145, 149, 152; Microsoft Corp., 550 U.S. at 458 n.18. Therefore, if "a product is made abroad and all components but a single commodity article are supplied from abroad, this activity is outside the scope of the statute." Life Techs., 580 U.S. at 152.

Section 271(f) provides patent-holders protection from companies attempting to circumvent the U.S. patent laws by exporting non-infringing components to be assembled abroad into an infringing final product and may be awarded compensation for infringements under Section 271, "to recover for lost foreign profits." WesternGeco, 585 U.S. at 417; 35 U.S.C. § 284 ("Section

284").[8] To award damages for violations of Section 271, there must be a domestic act of infringement and evidence that "foreign conduct increases the value of the domestic infringement itself." Brumfield v. IBG, LLC, 97 F.4th 854, 877 (Fed. Cir. 2024).

### 1. Sufficiency of Plaintiffs' Allegations

Defendant asserts that Plaintiff fails to allege an Accused Product which uncombined components are shipped from the United States or the specific *components* at issue here. [Def.'s MTD Mem. at 10, ECF No. 161]. Although discovery is underway, the stature of the motion before the Court is still a motion to dismiss, meaning the Court must consider at the pleading stage as to whether, given the proper opportunity, Plaintiffs may sustain a cause of action against Defendant under this legal theory. Here, that is particularly pertinent given that the motion to compel before the Court, discussed infra, pertains to the foreign sales, service, and marketing of these Accused Products. As noted by Defendant, Plaintiffs do not plead the specific components at issue for Accused Products exported from the United States, nor do they identify the eventual customer of such export. However, the standard at a motion to dismiss is plausibility not proof.

Plaintiffs allege that Sciex maintains manufacturing and global distributions centers within the United States, and that it is known that these Accused Products are exported to Canada, Mexico, Central America, and South America. [SAC ¶¶ 289–90]. Plaintiffs attach as exhibits instruction manuals for these Accused Products which identify the components of each product. [Id. Ex. 1–30]. At a minimum, it is known that devices are manufactured domestically and exported internationally. Therefore, it is plausible that these facilities would also have the capability of exporting the components of these devices. Plaintiffs assert throughout the complaint that these

[8] The issue of lost foreign profits and its relevance to Section 284 is discussed more fully infra, in relation to the Plaintiffs' pending Motion to Compel.

devices are shipped as components, including substantial components, with instructions detailing how to assemble the components of the Accused Products. [Id. ¶ 292]. Here, the products at issue are known, the components of the devices at issue are provided in documentation via the user manuals, and the fact that devices are manufactured in the United States and later exported at a minimum to Canada, Mexico, Central America, and South America are sufficiently pleaded. Plaintiffs have further alleged that offers for sale of these devices and components have been made at specific conference events. [Id. ¶ 297]. The particulars of which components are shipped, and to whom, will be a matter for discovery and summary judgment. Taking the facts pleaded in the SAC, accepted as true and drawing all reasonable inferences in Plaintiffs' favor, the claim narrowly survives the motion to dismiss.

The Court, however, will note its hesitation and remark on its expectations for summary judgment. First, Plaintiffs cannot plead a Section 271(f) claim based on the exportation of fully-assembled Sciex products. Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1366 (Fed. Cir. 1998) ("Neither export from the United States nor use in a foreign country of a product covered by a United States patent constitutes infringement."). Section 271(f), as demonstrated by its legislative history, was intended to cover the exportation of *substantial components* later assembled abroad. See Cardiac Pacemakers, 576 F.3d at 1360. Section 271(f) does not protect the exportation and shipment of complete devices, nor does it protect from the use, distribution, and manufacture of products abroad. See Life Techs., 580 U.S. at 145, 149. Nor will the presentation of an instruction manual and a mere theory that it can be used to assemble the products abroad be sufficient to incur liability. Microsoft Corp., 550 U.S. at 458 ("Section 271(f) does not identify as an infringing act[,] conduct in the United States that facilitates making a component of a patented invention outside the United States; nor does the provision check 'suppl[ying] . . . from the United

States' information, instructions, or other materials needed to make copies abroad." (quoting Section 271(f))). If presented at summary judgment, the Court expects, and the law requires, Plaintiffs to provide specific evidence as to the components which were exported from the United States and assembled abroad. A single commercial component to a multicomponent invention will not sustain a claim under Section 271(f). Life Techs., 580 U.S. at 152.

Secondly, the Supreme Court has made clear that method claims are not protected under Section 271(f) if there are no components to be supplied for assembly abroad. Cardiac Pacemakers, 576 F.3d at 1364 ("Section 271(f) cannot apply to method or process patents.") Defendant moves this Court to dismiss the Section 271(f) cause of action "for the '458 and '838 patents (which only recite method claims), claims 1–18 of the '909 Patent, claims 14–22 of the '973 Patent, claims 17–24 of the '096 Patent, claims 1–20 of the '894 Patent, and claims 25 and 26 of the '629 Patent," arguing that the claims at issue are method claims and beyond the scope of protection provided by Section 271(f). [Def.'s MTD Mem. at 15].

The Federal Circuit in Cardiac Pacemakers, on which Defendant principally relies, explicitly held that because method claims are intangible, they cannot be exported or "supplied" within the protections of Section 271(f). 576 F.3d at 1362 ("[T]he context of the statute and its legislative history, . . . lead us to the same conclusion, which is that Section 271(f) does not encompass method patents."). For a defendant to infringe on a method patent, the defendant must perform all steps of that method within the United States. Id. Here, Plaintiffs argue that the patents at issue include both apparatus and method claims, and are structural in nature, therefore, a dismissal of these claims prior to expert discovery would be premature. [Pls.' MTD Mem. at 22–23].

The law is clear that Plaintiffs cannot pursue method claims under a patent infringement theory supported by Section 271(f). However, if a patent includes both apparatus and method claims, Plaintiffs may proceed with the apparatus claims. See Cardiac Pacemakers, 576 F.3d at 1362 ("[A] component of a tangible product, device, or apparatus is a tangible part of the product, device, or apparatus, whereas a component of a method or process is a step in that method or process"); WesternGeco LLC v. ION Geophysical Corp., No. 9-cv-1827, 2011 WL 3608382, at *17 (S.D. Tex. Aug. 16, 2011).

Notwithstanding that determination, the Court will not dismiss these particular claims prior to the conclusion of expert discovery. The parties should bear this in mind in conducting discovery and avoid unnecessary discovery directed to claims which will ultimately fail to sustain a cause of action under Section 271(f). Defendant may re-assert this argument at summary judgment.

With these reservations noted, the motion to dismiss Count XIV is **DENIED.**

**ii. COUNT XII: Unjust Enrichment**

As noted by both parties, Count XII for Unjust Enrichment was previously considered and dismissed by this Court in its previous Order on Defendant's Motion to Dismiss the Amended Complaint. [ECF No. 136 at 19–22]. Plaintiffs do not assert any new facts or arguments for the Court's consideration as to this claim and concede that it should be dismissed. [ECF No. 173 at 11]. Therefore, the Court will not reconsider its prior ruling.

The Motion to Dismiss as to Count XII is therefore **GRANTED.**

**B. Motion to Compel Discovery (Request Nos. 153–61, 164–80, 183–84, 194–203, 208–09, 212–215, 218–224)**

After extensive briefing and oral argument, the discovery issues before the Court present quite narrowly. Defendant characterizes the current dispute as "whether Plaintiffs' *U.S. patent*

*infringement claims* entitle them to discovery into Sciex's foreign revenues on accused products neither made, imported, sold, nor offered for sale in the United States." [Def. MTC Mem. at 6, ECF No. 137 (emphasis in original)]. Sciex represents to the Court that it agreed to produce documents relevant to the issues of, "(1) revenue from any products that are manufactured, imported, or sold in the United States; (2) its aggregate domestic revenue from service and maintenance; and (3) worldwide revenue from the only two products Plaintiffs have identified as implicated by their non-patent claims." [Id.][9] Sciex, however, argues that Plaintiffs' discovery requests should be constrained, prohibiting them from collecting information as to revenue for the products which are manufactured abroad, only accused of patent infringement, and do not touch the United States. In support of this boundary, Defendant avers that Plaintiffs have not asserted sufficient facts to connect a domestic act of infringement to these products to assert protection under Section 271. [Id. at 12]. [10]

A party may serve on any other party a request for production within the scope of Rule 26(b). FED. R. CIV. P. 34(a). The discovery respondent bears the burden of establishing a lack of relevancy or some other basis for resisting production. FED. R. CIV. P. 34(a)(1). The party moving to compel discovery bears the burden of showing the relevance of the information sought. DMO

[9] The relevant Accused products include, the Intabio ZT system, manufactured in California, and the Echo MS and Echo MS+ products, manufactured in Singapore.

[10] The products for which Defendant argues are not discoverable are manufactured in Singapore and asserted to be distributed globally, but do not enter the United States. These products include: 5500 Series mass spectrometer instrument incorporating the SelexIon; 6500 Series mass spectrometer instrument incorporating the SelexIon; 6500+ Series mass spectrometer instrument incorporating the SelexIon+; TripleTOF 5600+ mass spectrometer instrument incorporating the SelexIon; TripleTOF 6600 mass spectrometer instrument incorporating the SelexIon; 7500 mass spectrometer instrument incorporating the D Jet; 7500+ mass spectrometer instrument incorporating the D Jet+; ZenoTOF 8600 mass spectrometer instrument incorporating the D Jet; CESI 8000 Plus System; and, OptiFlow Pro Ion Source.

Norwood LLC v. Kia Am., Inc., 691 F. Supp 3d 252, 256-57 (D. Mass. 2023). Once that party makes such a showing, the burden shifts to the nonmoving party to show that the request is improper. Id.

Plaintiffs seek global sales information for all Accused Products and argue that it is premature to require *proof* of domestic acts of infringement to obtain discovery on the products which are alleged exclusively under patent theories. [Pls.' MTC Mem. at 8, 25, ECF No. 128-1]. Plaintiffs further argue that discovery of this foreign sales information is relevant and essential to their non-patent claims (trade secret misappropriation, breach of contract, and unfair and deceptive business practices); are relevant to their claims of infringement under Section 271 (a)–(c), and (f); are essential to calculate damages under Section 284 including for a reasonable royalty rate; and necessary to rebut Defendants' affirmative defense of obviousness via theory of commercial success. [See Pls.' MTC Mem.; Hr'g Tr. 4:4–4:14, ECF No. 146]. The Court agrees for several reasons.

First, discovery requests must be reasonably calculated to lead to the discovery of admissible evidence, and a patentee is generally entitled to a reasonable royalty on sales by a party who infringes the patent; therefore, information reasonably calculated to lead to evidence supporting such a royalty will meet the standards of Rule 26(b)(1). Courts typically calculate reasonable royalties by weighing the Georgia-Pacific factors. See Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Chr. Hansen HMO GMBH v. Glycosyn LLC, 22-cv-11090-NMG, 2025 WL 2176954, at *3 (D. Mass. March 31, 2025).

Plaintiffs argue that several of the Georgia-Pacific factors support their theory for discovery. [Hr'g Tr. 5:10–12]. Plaintiffs cite factor six: "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention

to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;"[11] factor eight, "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity," and factor eleven, "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use" of the Georgia Pacific Analysis, among others. Georgia-Pacific Corp., 318 F. Supp. at 1120.

The Supreme Court in WesternGeco held that patentees may recover for foreign injuries that are proximately caused by domestic acts of infringement. 585 U.S. at 417 ("Taken together, § 271(f)(2) and § 284 allow the patent owner to recover for lost foreign profits . . . we hold today, it can include lost foreign profits when the patent owner proves infringement under § 271(f)(2)."). The Federal Circuit's subsequent decision in Brumfield opened an additional avenue of damages for foreign activities resulting from certain types of domestic activities, in part, holding that a patentee may recover reasonable royalty damages based on foreign sales. 97 F.4th at 875–77. Since this decision, federal courts have permitted analyses of an accused infringer's worldwide sales to assess a reasonably royalty for damages. See 10X Genomics, Inc. v. Vizgen, Inc., No. 22-cv-595-MFK, 2025 WL 26734, at *11 (D. Del. Jan. 3, 2025); IPA Techs., Inc. v. Microsoft Corp., No. 18-1-RGA, 2024 U.S. Dist. LEXIS 80212, at *2–6 (D. Del. May 2, 2024); DivX, LLC v. Amazon.com, Inc., 2026 U.S. Dist. LEXIS 99529, at * 40–42 (E.D. Va. May 4, 2026).[12]

[11] "A convoyed sale is a sale of a product that is not patented, but is sufficiently related to the patented product such that the patentee may recover lost profits for lost sales." Warsaw Orthopedic, Inc. v. NuVasive, Inc., 778 F.3d 1365, 1375 (Fed. Cir. 2015), cert. granted, judgment vacated sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc., 577 U.S. 1099 (2016), and opinion reinstated in part, 824 F.3d 1344 (Fed. Cir. 2016).

[12] The Court notes that Defendant relies on cases decided almost exclusively prior to the Federal Circuit's decision in Brumfield, which expanded the potential theories for damages related to foreign activities under Section 271. See Brumfield, 97 F.4th at 877.

This conclusion is further strengthened by the Court's determination on the cause of action for Section 271(f). Plaintiffs have alleged in their Second Amended Complaint that Sciex offers service and maintenance plans for the Accused Products. [SAC ¶ 301]. The revenue and profits derived from components sold or services provided with the Accused Products are discoverable and may be included in calculating damages for infringement. Abiomed, Inc. v. Maquet Cardiovascular LLC, No. CV 16-10914, 2019 WL 13089050, at *1 (D. Mass. June 21, 2019) (determining that worldwide sales are relevant and discoverable for damages under Section 271).

Defendants assert that the Georgia-Pacific factors and its "hypothetical negotiation" approach, do not support discovery of foreign sales because "an accused infringer would not have agreed to pay any royalties on a non-infringing sale, such as products that are manufactured and sold abroad." [Def.'s MTC Mem. at 22]. This is an argument which may be re-introduced at a later juncture, however, it does not impact the Court's consideration of what is *discoverable* in this case given the decisions of WesternGeco and Brumfield.

Second, not only is the revenue generated from component sales and services associated with the Accused Products relevant to Plaintiffs' potential damages resulting from the alleged patent infringement, but it is also relevant to Plaintiffs' theories of commercial success and non-obviousness. "A showing of commercial success of a claimed invention, wherever such success occurs, is relevant in resolving the issue of non-obviousness." Intex Rec Corp. v. Bestway USA Inc., No. LA CV16-3300 JAK, 2021 WL 6618494, *6 (C.D. CA Nov. 10 2021) (quoting Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co., 730 F.2d 1452, 1461 (Fed. Cir. 1984).

The Court will abstain for now from determining whether or not Plaintiffs can prove domestic acts of infringement that led to these foreign sales, that is an issue of fact which would

be inappropriate to resolve on a motion to dismiss or a motion to compel. The Court agrees with Plaintiffs that, for discovery purposes, worldwide sales information is relevant for reasonable royalty calculations and commercial success as a defense to obviousness. Furthermore, the requested discovery appears to be proportional to the needs of the case as it is reasonably targeted to the Accused Products and relatively limited in scope. Defendant may introduce arguments as to the admissibility of this evidence, if applicable, at a later posture.

The motion to compel is therefore **GRANTED.**

### C. Costs

The parties will bear their own costs as to the Motion to Compel. Sanctions are not appropriate when "the opposing party's nondisclosure, response, or objection was substantially justified." FED. R. CIV. P. 37(A)(5).

## IV. CONCLUSION

For the reasons stated above,

1. The Motion to Dismiss, ECF No. 160, is **GRANTED IN PART** and **DENIED IN PART**;
2. The Motion to Compel, ECF No. 128, is **GRANTED.**

**SO ORDERED.**

Dated: September 28, 2026

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge